SELECTIVE INSURANCE COMPANY OF THE SOUTHEAST, PLAINTIFF v. NCNB NATIONAL BANK OF NORTH CAROLINA AND THE STATE OF NORTH CAROLINA, DEFENDANTS, AND NCNB NATIONAL BANK OF NORTH CAROLINA, THIRD-PARTY PLAINTIFF v. AIRBORNE FREIGHT CORPORATION D/B/A AIRBORNE EXPRESS, THIRD-PARTY DEFENDANT

No. 544A88

(Filed 27 June 1989)

**State § 4— crossclaim against State—contribution and indemnification—erroneously dismissed**

NCNB's crossclaim against the State for contribution and indemnification should not have been dismissed where Selective Insurance Company deposited bearer bonds with a par value of $500,000 with the Department of Insurance as a condition of conducting business in North Carolina; NCNB was custodian of the bonds for Selective; NCNB hired third-party defendant Airborne Freight Corporation to deliver the bonds to the Department; the Department advised NCNB that it had received the Airborne package but that the package had been lost; Selective sought relief from the State and from NCNB; NCNB asserted a crossclaim against the State for contribution and indemnity; the State successfully moved to dismiss the complaint and the crossclaim; and the complaint was reinstated by the Court of Appeals. The State may be held liable as a coparty under N.C.G.S. § 1A-1, Rule 13(g) for purposes of contribution and indemnification to the same extent that the State may be held liable as a third-party defendant under N.C.G.S. § 1A-1, Rule 14(c). Whether a claim against the State for contribution and indemnification is asserted as a crossclaim or a third-party action depends upon whether the State had been made a defendant in the original action; there is no substantive difference between the claims, and allowing claims against the State for contribution and indemnification to be asserted as crossclaims accomplishes the legislative purposes behind Rule 13(g) and avoids absurd or bizarre consequences by preventing the necessity of a second action before the Industrial Commission to settle claims between the coparties. N.C.G.S. § 1B-1(h).

**Am Jur 2d, Municipal, County, School and State Tort Liability § 658.**

Justice MITCHELL dissenting.

Justice MEYER joins in this dissenting opinion.

APPEAL by defendant-appellant NCNB National Bank of North Carolina against defendant-appellee State of North Carolina pursuant to N.C.G.S. § 7A-30(2), from a divided panel of the Court of Appeals, 91 N.C. App. 597, 372 S.E. 2d 876 (1988), which affirmed in part, reversed in part and remanded the order of *Herring, J.,* entered 15 December 1986 in Superior Court, WAKE County, which granted defendant-appellee's motions to dismiss. Heard in the Supreme Court 11 April 1989.

*Lacy H. Thornburg, Attorney General, by Thomas D. Zweigart, Assistant Attorney General, for defendant-appellee State of North Carolina.*

*Smith Helms Mullis & Moore, by E. Osborne Ayscue, Jr., Benne C. Hutson and Irving M. Brenner, for defendant-appellant NCNB National Bank of North Carolina.*

FRYE, Justice.

The issue before this Court, one of first impression, is whether a crossclaim for contribution and indemnification may be asserted against the State in our trial courts. We answer in the affirmative.

This appeal had its genesis in a cause of action instituted by Selective Insurance Company of the Southeast (hereinafter Selective) against both NCNB National Bank of North Carolina (hereinafter NCNB) and the State of North Carolina (hereinafter State) arising out of the loss or theft of bearer bonds with a par value of $500,000. The bonds were deposited by Selective with the North Carolina Department of Insurance (hereinafter Department) as a condition for conducting insurance business in North Carolina. NCNB was the custodian of the bonds for Selective which instructed NCNB to deposit the bonds with the Department. NCNB hired third-party defendant Airborne Freight Corporation to deliver the bonds to the Department, which it did on or about 15 January 1985. In February 1985, the Department advised NCNB that it had received the Airborne package but that the package had been lost. The package has yet to be found.

In its complaint Selective asks for declaratory relief and damages for breach of trust against the State, that a surety bond it executed as a condition for reissuance of those bonds be declared void, and that Selective be relieved of any liabilities or obligations under that surety bond. As against NCNB, Selective seeks a declaratory judgment that, because of NCNB's alleged negligence and breach of a custodianship agreement under which it had held the bonds, NCNB is liable to Selective for any and all liabilities incurred by or asserted against Selective with respect to the bearer bonds. Selective also seeks monetary damages caused by NCNB's alleged negligence.

NCNB filed an answer and asserted a crossclaim against the State for contribution and indemnity. The State moved to dismiss Selective's complaint and NCNB's crossclaim. The motions were granted and both Selective and NCNB appealed to the Court of Appeals. The Court of Appeals reversed the trial court's dismissal of Selective's claim against the State on the grounds that an actual controversy existed and the complaint presented a basis for declaratory relief. The Court of Appeals, however, affirmed the trial court's dismissal of NCNB's crossclaim against the State on the ground that the trial court had no subject matter jurisdiction over NCNB's crossclaim. The Court of Appeals held that NCNB's crossclaim is a tort claim against the State and must be heard by the Industrial Commission pursuant to the State Tort Claims Act. Judge Wells dissented from that part of the majority opinion which held that the trial court properly dismissed NCNB's crossclaim against the State. NCNB brought this appeal contesting the dismissal of its crossclaim against the State.

In its crossclaim, NCNB asserts two claims against the State. The first is for contribution. NCNB contends that if it was negligent, then "the State of North Carolina, through the Department, was [also] negligent in losing the package containing the Bearer Bonds and that such negligence on the part of the State of North Carolina joined and concurred with the negligence of NCNB, if any, and NCNB is entitled to recover contribution from the State of North Carolina . . . ."

NCNB's second claim against the State is for indemnification. NCNB contends that if it was negligent in any way, "the State of North Carolina, through the Department, was negligent in losing the package containing the Bearer Bonds and that such negligence of the State of North Carolina was the primary, active and proximate cause of Southeastern's damages . . . and therefore, NCNB is entitled to be indemnified by the State of North Carolina . . . ."

NCNB properly asserted these claims as crossclaims pursuant to N.C.G.S. § 1A-1, Rule 13(g), because the State was a co-defendant in the original action brought by Selective against both NCNB and the State. Rule 13(g) provides:

(g) *Crossclaim against coparty.* — A pleading may state as a crossclaim any claim by one party against a coparty arising

out of the transaction or occurrence that is the subject mat-
ter either of the original action or of a counterclaim there-
in or relating to any property that is the subject matter of
the original action. Such crossclaim may include a claim
that the party against whom it is asserted is or may be liable
to the crossclaimant for all or part of a claim asserted in the
action against the crossclaimant.

N.C.G.S. § 1A-1, Rule 13(g) (1983).

In the instant case, the Court of Appeals affirmed the trial
court's finding that it lacked jurisdiction over NCNB's crossclaim
on the grounds that there is no express provision in Rule 13(g),
comparable to Rule 14(c), which allows a crossclaim to be asserted
against the State. The Court of Appeals noted that "[t]he Legisla-
ture has simply not similarly excepted crossclaims against the
State from the Tort Claims Act as it has for third-party claims."
*Selective Ins. Co. v. NCNB*, 91 N.C. App. 597, 602, 372 S.E. 2d
876, 880 (1988). Accordingly, the Court of Appeals held that
NCNB's crossclaim against the State is a tort-based action which
pursuant to the State Tort Claims Act must be heard by the In-
dustrial Commission rather than in state court.

The State Tort Claims Act provides in pertinent part as fol-
lows:

The North Carolina Industrial Commission is hereby con-
stituted a court for the purpose of hearing and passing upon
tort claims against the State Board of Education, the Board
of Transportation, and all other departments, institutions and
agencies of the State.

N.C.G.S. § 143-291 (1987 & Cum. Supp. 1988).

Both the Court of Appeals and the State rely upon *Guthrie v.
State Ports Authority*, 307 N.C. 522, 299 S.E. 2d 618 (1983), in
asserting that by enacting the State Tort Claims Act, and
N.C.G.S. § 1A-1, Rule 14(c), the legislature expressly waived the
State's sovereign immunity under specifically limited circum-
stances and that such statutes waiving sovereign immunity must
be strictly construed. While each of those propositions is true,
*Guthrie* is not applicable to the instant case.[1] Sovereign immunity

---

1. *Guthrie* involved an attempt to make the State Ports Authority, a state
agency, an original party defendant in a tort action. This Court held that the State
had not waived its sovereign immunity to this extent.

for claims against the State for contribution has been waived by N.C.G.S. § 1B-1(h) which allows the State to be sued for contribution as a joint tort-feasor.[2] "The right to indemnification arises out of a tort claim, the State's immunity to which was abrogated by the Tort Claims Act." *Teachy v. Coble Dairies, Inc.*, 306 N.C. 324, 332, 293 S.E. 2d 182, 186-87.

N.C.G.S. § 1B-1(h) and the State Tort Claims Act operate to waive sovereign immunity for claims against the State for contribution and indemnification. The State correctly points out that statutes waiving sovereign immunity must be strictly construed. *Guthrie v. State Ports Authority*, 307 N.C. 522, 538, 299 S.E. 2d 618, 627. However, Rule 13(g) does not address the immunity of the State from crossclaims against the State for contribution and indemnification, but rather presents the question of whether state courts are the proper forum—as opposed to the Industrial Commission—for such claims.

In the instant case, the State has already been made a party to the action in state court. The Court of Appeals has held that the complaint against NCNB and the State should not have been dismissed for failure to state a claim, and that question is not before us. Thus, we are presented with the question of whether the State, properly a party defendant, may be subject to a crossclaim for contribution and indemnification asserted by a codefendant in the same action. Stated differently, is the State a "coparty" within the meaning of Rule 13(g) so that a party may state as a crossclaim against it a claim for contribution and indemnification arising out of the transaction or occurrence that is the subject matter of the action? Since it is clear that the State is not immune from such claims substantively, and since the State is already properly before the court as a party defendant, there is no reason to exclude the State from the definition of a coparty

---

2. The Uniform Contribution Among Tort-Feasors Act provides:

(h) The provisions of this Article shall apply to tort claims against the State. However, in such cases, the same rules governing liability and the limits of liability shall apply to the State and its agencies as in cases heard before the Industrial Commission. The State's share in such cases shall not exceed the pro rata share based upon the maximum amount of liability under the Tort Claims Act.

N.C.G.S. § 1B-1(h) (1983).

under Rule 13(g).[3] We hold that the State may be held liable as a coparty under Rule 13(g) for purposes of contribution and indemnification to the same extent that the State may be held liable as a third-party defendant under Rule 14(c).

The only difference between crossclaims for contribution and indemnification brought pursuant to Rule 13(g) and third-party actions brought under Rule 14 is that crossclaims are asserted against coparties whereas third-party actions are asserted against non-parties. Whether a claim against the State for contribution and indemnification is asserted as a crossclaim or a third-party action depends upon whether the State has been made a defendant in the original action; there is no substantive difference between the claims.

Rule 13(g) and Rule 14 both address claims for contribution and indemnification in almost identical language. Rule 13(g) provides that crossclaims may "include a claim that the party against whom it is asserted is or may be liable to the crossclaimant for all or part of" the claim asserted against the crossclaimant. Similarly, Rule 14 allows a defendant, as a third-party plaintiff, to serve a summons and complaint on any non-party "who is or may be liable to him for all or part of the plaintiff's claim against him."

Beyond nearly identical language, Rule 13(g) and Rule 14 also share an identical purpose, namely, that all related claims be settled, whenever possible, in one action. *See* Shuford, *North Carolina Civil Practice and Procedure*, §§ 13-3 and 14-3 (3d ed. 1988). Crossclaims are allowed in order "to avoid multiple suits and to encourage the determination of the entire controversy among the parties before the court with a minimum of procedural steps." C. Wright & A. Miller, *Federal Practice and Procedure* § 1431 at 161 (1971) (commenting on Rule 13(g) of the Federal Rules of Civil Procedure which is identical to the North Carolina rule).

Similarly, the general purpose of Rule 14 is "to avoid two actions which should be tried together to save the time and cost of a reduplication of evidence, to obtain consistent results from iden-

---

3. Since crossclaims can only be asserted against *coparties*, it was unnecessary for the legislature to say expressly that the State may be *made* a party under Rule 13(g) as it did in Rule 14 which provides for bringing in new parties.

tical or similar evidence. [sic] and to do away with the serious handicap to a defendant of a time difference between judgment against him, and a judgment in his favor against the third-party defendant." 3 Moore's Federal Practice § 14.04 at 26 (2d ed. 1988) (commenting on Rule 14 of the Federal Rules of Civil Procedure which is substantially similar to the North Carolina rule).

Allowing claims against the State for contribution and indemnification to be asserted as crossclaims accomplishes the legislative purpose behind Rule 13(g)[4] and avoids absurd or bizarre consequences, by preventing the necessity of a second action before the Industrial Commission to settle claims between the coparties. An absurd result would be reached by allowing the State to be made a third-party defendant on a claim for contribution or indemnification while prohibiting an identical claim to be made by a coparty in an action in which the State is already a party. We do not believe that the legislature intended an absurd result.

We therefore reverse the Court of Appeals on this question and remand the case to that court for further remand to the trial court for reinstatement of NCNB's crossclaim against the State for contribution and indemnification.

Reversed in part and remanded.

Justice MITCHELL dissenting.

The Court of Appeals correctly noted that the General Assembly simply has not excepted crossclaims against the State from the requirements of the Tort Claims Act, while it has clearly excepted third-party claims from those requirements. Although the Court of Appeals recognized that it would be logical to also except crossclaims from the requirements of the Act, it declined to judicially create such an exception where the General Assembly had so clearly *chosen* not to provide an exception. I agree with the view apparently held by the Court of Appeals that the rules of construction applied by the majority of this Court in the present case have no application in situations such as this, where

---

4. The Comment to Rule 13(g) provides: "Certainly the most common bases for crossclaims are those for contribution or indemnification in respect of the crossclaimant's alleged liability, and the last sentence [of] Rule 13(g) specifically authorizes these bases."

the General Assembly has spoken clearly but, according to the majority of this Court, reached an "absurd" result.

It is for the General Assembly, and not for this Court, to waive the State's sovereign immunity and to determine the forum in which claims against the State will be heard when it waives sovereign immunity. Therefore, for the reasons stated by Judge Cozort in his opinion for the majority in the Court of Appeals, I dissent.

Justice MEYER joins in this dissenting opinion.